UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICARDO M. OBANDO-VARGAS,

        Petitioner,

    v.

ASSISTANT DIRECTOR, US DHS
ICE ERO MIAMI FIELD OFFICE,
DIRECTOR, US DHS ICE ERO
MIAMI FIELD OFFICE,

        Respondents.

Case No. 2:26-cv-265-KCD-NPM

_____/

## **ORDER**

This case is about the Government's power to press pause on a noncitizen's liberty while it tries to press play on their deportation. Petitioner Ricardo M. Obando-Vargas, a Nicaraguan citizen, has lived in the United States for forty years. For the last three, he has been free on an order of supervision—a kind of immigration parole where he checks in periodically but otherwise lives his life.

That changed on January 5, 2026, when the Government revoked Obando-Vargas's supervision and took him back into custody. He has now filed a habeas corpus petition to challenge that confinement. (Doc. 1.)[1] He says the Government broke the rules: that they revoked his freedom without

_____

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

the proper notice and interview, that the wrong official revoked his release, and that his detention has no end in sight. (*Id.* at 14-16.)

The Government meets the petition with two arguments. (Doc. 8.) As a threshold matter, it argues that this Court lacks subject-matter jurisdiction to review the claims. (*Id.* at 3-5.) On the merits, the Government contends that it did exactly what the law permits. By revoking Obando-Vargas's release to enforce a final removal order, the agency satisfied both its own regulations and the Constitution's due process demands. (*Id.* at 6-15.) They also state that they intend to remove Obando-Vargas to Mexico in the near future. (*Id.* at 15.)

The Government is wrong that the courthouse doors are closed to Obando-Vargas. But as discussed below, he has failed to show that his return to custody is unlawful. His habeas petition thus fails.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration

2

detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

### A. Jurisdiction

The Government first claims that two provisions of the Immigration and Nationality Act—8 U.S.C. § 1252(g) and § 1252(b)(9)—strip this Court of jurisdiction. The argument goes like this: Obando-Vargas is being detained so he can be removed; therefore, his lawsuit arises from the "execution" of a removal order, and Congress has said district courts cannot touch that.

The Government's reading is too broad. It treats the INA's jurisdiction-stripping provisions like a black hole, sucking in any claim that has even a tangential relationship to a removal order. But the Supreme Court has told us to read these statutes much more narrowly. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018).

First up, § 1252(g) says that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at

3

*1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

But § 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings*, 583 U.S. at 294. Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Obando-Vargas's petition steers clear of those forbidden actions. He is not asking this Court to vacate his removal order or to stop the Government from putting him on a plane. Instead, he is challenging the procedural mechanics of his current detention. His argument is that the Government failed to follow its own rulebook when it revoked his release. Specifically, it skipped the required interview and allowed an unauthorized official to sign the revocation notice. A claim that the Government locked someone up in violation of binding regulations is a challenge to the process of detention, not a challenge to the commencement or execution of a removal order. *See, e.g.*, *Navarro v. Bondi*, No. 8:25-CV-3213-KKM-NHA, 2025 WL 3275944, at *2 (M.D. Fla. Nov. 25, 2025).

The core of this case is not about the Attorney General's decision to detain Obando-Vargas. It's about whether the Government followed its own regulations in that process. (*See* Doc. 1.) Such a claim is best understood as independent of, and collateral to, removal because it may be resolved without affecting the Attorney General's prosecutorial discretion that § 1252(g) was meant to preserve. *See Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); *see also Arroyo v. Diaz*, No. 25-62676-CIV, 2026 WL 279656, at *4 (S.D. Fla. Feb. 2, 2026); *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026).

Next up is the so-called "zipper clause," which "bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting 8 U.S.C. § 1252(b)(9)). This discussion can be short. The Eleventh Circuit has held "that the zipper clause only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Obando-Vargas is not challenging a removal order. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

With the jurisdictional underbrush cleared away, the Court can turn to the merits. Obando-Vargas's claims are addressed in turn.

## B. Substantive Due Process

The Fifth Amendment entitles noncitizens to due process during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a

6

penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at \*7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Obando-Vargas cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Obando-Vargas's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

Nor are we anywhere near the constitutional danger zone. ICE re-detained Obando-Vargas on January 5, 2026. He has been in custody for nearly four months. That is a far cry from the indefinite, limbo-like detention

that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls well within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Obando-Vargas claims that his removal is not likely in the foreseeable future. (Doc. 1 ¶75.) This argument fails. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Recognizing this hurdle, Obando-Vargas attempts a workaround. He first argues that the six-month reasonable detention period "began in 2023

after the IJ entered his removal order" and not physical custody. (Doc. 1 ¶ 73.) In other words, the six-month period begins at the start of the removal period, regardless of the petitioner's actual detention status.

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311. Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

When the Government holds a noncitizen for only a few months to execute a valid removal order, it is not doling out a penalty. It is simply doing what the regulatory scheme authorizes. Because his brief confinement

9

remains firmly tethered to a legitimate, civil immigration purpose, Obando-Vargas's substantive due process claim fails. *See H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *3 (M.D. Ga. Sept. 15, 2021); *Gudino v. Lowe*, No. 1:25-CV-00571, 2026 WL 526366, at *8 (M.D. Pa. Feb. 25, 2026) ("[T]he length of detention is generally not unreasonable until the noncitizen has been detained for more than six months.").

## C. Procedural Due Process

For starters, it's not entirely clear that Obando-Vargas is entitled to a freestanding due process analysis at this time. When the Supreme Court confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. So until that timer goes off, *Zadvydas* itself seemingly supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). Because Obando-Vargas's detention is barely out of the starting gate, he is presumably not yet entitled to anything more.

But even if we assume the due process clause applies with full force, Obando-Vargas still comes up empty. His claims boil down to a familiar

grievance: the Government ignored its own regulations. (Doc. 1 ¶ 67.) He alleges that ICE locked him back up without providing the required notice or an interview after his return to custody. (*Id.* ¶ 68.) He also claims that his revocation is void because the official who revoked the revocation lacked the authority to do so. (*Id.* ¶ 69.) By ignoring the agency's rulebook, the logic goes, the Government short-circuited his constitutional rights. (*Id.* ¶ 67.)

At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). Obando-Vargas received both. (*See* Doc. 8-1 at 1-3.) He offers nothing to rebut those records in his reply, nor does he challenge the process that he was afforded. (Doc. 10.) Obando-Vargas received exactly what the Fifth Amendment requires—fair notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

11

Obando-Vargas lastly complains that the "Respondents violated 8 C.F.R. §241.4(l) as the ERO official at his OSUP appointment who revoked his [supervision] lacked authority to do so." (Doc. 1 ¶ 69.) He insists this technicality voids the entire revocation. *See* 8 C.F.R. § 241.4(l)(2); *cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area.").

But there is a fundamental problem with this point: Obando-Vargas is reading the wrong regulation. He was originally released back in 2023 because his removal to Nicaragua was withheld under § 241(b)(3).[2] (Doc. 1-4.) That puts his case on a different regulatory track, one governed by 8 C.F.R. § 241.13. When the Government decides it is time to again detain someone on that specific track, it must follow the revocation procedures from § 241.13. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky.

---

[2] Withholding of removal can be granted pursuant to § 241(b)(3)(B) of the INA or the Convention Against Torture ("CAT"). *See* 8 C.F.R. §§ 1208.16(b)-(c).  In this case, Obando-Vargas was granted withholding of removal pursuant to § 241(b)(3)(B) of the INA, which requires a showing that "his life or freedom would be threatened ... because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* § 1208.16(b) (describing the burden of proof for consideration of withholding of removal pursuant to § 241(b)(3)). (Doc. 1-4 at 7.) "Withholding of removal status is 'country-specific;' while a non-citizen granted withholding of removal cannot be removed to the country where his life or freedom would be threatened, he can be removed to a third country." *Kinuthia v. Biden*, No. 21-cv-11684-NMG, 2022 WL 17653503, at *2 (D. Mass. Nov. 9, 2022); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 535-36 (2021) ("When an alien applies for withholding-only relief, he does so as to a particular country.").

12

Feb. 6, 2026). The Government acknowledges that § 241.13 applies in the Notice of Revocation. (Doc. 8-1.)

Here is the catch: unlike its counterpart, § 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials. It simply says the agency can revoke an order of supervision if changed circumstances mean removal is now significantly likely. Obando-Vargas is trying to borrow a procedural hurdle from a completely different regulation and wedge it into his case. But a petitioner cannot mix and match regulatory provisions to manufacture an *Accardi* violation. *Cf. Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation.").

### D. Administrative Procedure Act

Finally, Obando-Vargas invokes the Administrative Procedure Act ("APA"). (Doc. 1 at 14.) The difficulty here is twofold. First, Obando-Vargas has brought these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas

13

petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for these claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Obando-Vargas has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Obando-Vargas is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

14

### III. Conclusion

Obando-Vargas has not established that his current detention is unlawful. But he may return to challenge his revocation if his continued detention becomes unconstitutionally prolonged. Accordingly, the Verified Petition for Habeas Corpus (Doc. 1) is **DENIED WITHOUT PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment, deny any pending motions as moot, and close this case.

**ORDERED** in Fort Myers, Florida on March 23, 2026.

Kyle C. Dudek
United States District Judge

15